# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

CHRISTOPHER EATON, OWEN §
BARTLETT, JAMES VENABLE, §
    *Plaintiffs,* §
  §
**v.** §
  §
  §
CHIEF BRENT STROMAN, IN HIS §        **CIVIL NO. 1-16-CV-00871-ADA**
INDIVIDUAL CAPACITY; DET. §
MANUEL CHAVEZ, IN HIS §
INDIVIDUAL CAPACITY; ABELINO §
REYNA, IN HIS INDIVIDUAL §
CAPACITY;  CITY OF WACO, §
TEXAS,  MCLENNAN COUNTY, §
TEXAS, ASSISTANT CHIEF ROBERT §
LANNING, IN HIS INDIVIDUAL §
CAPACITY; DET. JEFFREY §
ROGERS, IN HIS INDIVIDUAL §
CAPACITY; PATRICK SWANTON, IN §
HIS INDIVIDUAL CAPACITY; §
STEVEN SCHWARTZ, IN HIS §
INDIVIDUAL CAPACITY; AND §
CHRISTOPHER FROST, IN HIS §
INDIVIDUAL CAPACITY; §
    *Defendants.* §

## ORDER

Before the Court are: Defendants Frost and Schwartz's Motion to Dismiss (ECF No. 56); the City Defendants' Joint Motion to Dismiss (ECF No. 57); Defendants Reyna and McLennan County's Motion to Dismiss (ECF No. 58); and the respective responses, replies, and sur-replies thereto. The Court, having considered the Motions and applicable law, finds that the Motions should be **DENIED** or **DENIED IN PART** and **GRANTED IN PART** as discussed below.

# I.    INTRODUCTION

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted in a shootout that left nine dead and many injured. In the aftermath of the incident, police arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges against the arrestees. The plaintiffs in this case, Christopher Eaton, Owen Bartlett, and James Venable were arrested pursuant to the same probable cause affidavit as the other arrestees.

Plaintiffs bring this case pursuant to 42 U.S.C. § 1983. They allege that the defendants violated their Fourth Amendment rights by obtaining arrest warrants based on a fill-in-the-name affidavit that lacked probable cause. Plaintiffs also allege that the defendants violated their Fourteenth Amendment due process right to be free from unlawful arrest. Plaintiffs allege that the defendants conspired to commit these violations.

There are three groups of defendants in this case. The first group consists of: the City of Waco, Texas; Brent Stroman, Chief of Police; Robert Lanning, Assistant Chief of Police; detective Jeffrey Rogers; and police officers Manuel Chavez, Patrick Swanton. The second group is McLennan County, Texas and former McLennan County District Attorney Abelino "Abel" Reyna. The third group is Steven Schwartz and Christopher Frost, both of whom are special agents of the Texas Department of Public Safety. The plaintiffs bring suit against the City of

Waco ("the City") and McLennan County ("the County") as municipalities and the other defendants in their individual capacities. The individual defendants all assert qualified immunity.

## II.     LEGAL STANDARDS

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations; accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare

circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

# III.    ANALYSIS

## A.  Fourth and Fourteenth Amendments

At the outset, the Court notes that Plaintiffs bring their claims against the defendants under both the Fourth and Fourteenth Amendments. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal punctuation omitted). A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Because the Fourth Amendment covers unlawful arrest, Plaintiffs cannot also seek relief under the Fourteenth Amendment. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Accordingly, Plaintiffs' Fourteenth Amendment claims are **DISMISSED**, and the Court will address their claims in the context of the Fourth Amendment.

The Court also notes that Plaintiffs attempt to invoke an exception to the general rule described above, citing *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016). In *Cole*, the Fifth Circuit recognized deliberate fabrication of evidence by police may create a Fourteenth Amendment claim if such a claim may not be pursued under the Fourth Amendment. *Id.* First, Plaintiffs have a Fourth Amendment claim in this case. Second, the Fifth Circuit issued this decision on September 25, 2015, over four months *after* the shootout at Twin Peaks. Again, to overcome a defendant's qualified immunity, a

plaintiff must show that the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed*, 923 F.3d at 414. The exception that Plaintiffs seek to invoke had not yet been recognized in this Circuit at the time their cause of action arose, and as such, any right recognized in *Cole* was not clearly established.

There are two claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: **(1)** claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and **(2)** claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause," *Michalik*, 422 F.3d at 258 n.5. In the instant case, Plaintiffs bring claims under both theories.

### i. *Malley* violation

Plaintiffs allege that the defendants violated their Fourth Amendment rights by presenting a facially deficient warrant affidavit. Third Am. Compl. (hereinafter, "Am. Compl.") at 29–31. Plaintiffs argue that the warrant is a general warrant, devoid of any particularized facts related to any of the plaintiffs. *See id.* (warrant affidavit also included below). They argue that the affidavit contains many facial shortcomings, including: it fails to describe specific actions by the plaintiffs; it contains no specific allegations regarding the plaintiffs' membership or affiliation with a criminal street gang; it contains no specific allegations regarding a conspiracy to commit criminal acts; and it offers no specific allegation that the plaintiffs committed any violent act.

A *Malley* violation is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant.

In *Spencer v. Staton*, an arrestee brought a § 1983 action alleging that she was arrested on a facially invalid warrant that was unsupported by probable cause. 489 F.3d 658, 661 (5th Cir. 2007). The affidavit contained only the arrestee's biographical and contact information, the charged offense, and a conclusory statement that she had committed the crime of assisting others in evading authorities. *Id.* The Fifth Circuit held that this was "a textbook example of a facially invalid, 'barebones' affidavit." *Id.*

In *Kohler v. Englade*, police searching for a serial killer sought a DNA sample from the plaintiff during a criminal investigation. 470 F.3d 1104, 1107 (5th Cir. 2006). A detective prepared an affidavit for a seizure warrant that offered no indication as to the identity or credibility of a tipster who implicated the plaintiff, nor did the affidavit indicate any corroborating evidence to support the tip. *Id.* at 1110–11. Additional information in the affidavit regarding Kohler's twenty-year-old burglary conviction, employment status, his past employment with a company with a secondary shop on a road where items belonging to one of the victims were found, and refusal to voluntarily submit to a saliva swab, failed to establish probable cause that he was the serial killer. *Id.* at 1111. "Even when considered in their totality, the circumstances set forth in the affidavit failed to provide a nexus" between the plaintiff's DNA and the serial killings. *Id.*

In *Blake v. Lambert*, a challenged affidavit merely identified the plaintiff and recited the charge and relevant statute. 921 F.3d 215, 220 (5th Cir. 2019). The affidavit did not provide enough supporting facts to establish probable cause, such as the officer's experience, the sources

of the information in the affidavit or the reliability of those sources, or his conversations with the plaintiff during his investigation. *Id.* at 220–21. The Fifth Circuit found this to be a "textbook example" of a facially invalid affidavit. *Id.* (citing *Spencer*, 489 F.3d at 658).

The affidavit at issue in the instant case stated:

My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of Waco by The State of Texas. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that on or about May 17, 2015, in McLennan County, Texas, the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.

My probable cause for said belief and accusation is as follows:

Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco, McLennan County Texas. Three or more members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, multiple persons where shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying the Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities.

After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.

Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.

_Mal Chn 258_
Complainant

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON
THIS THE _18th_ DAY OF _may_, _2015_.

_R. H. DeLeon_
JUSTICE OF THE PEACE
MCLENNAN COUNTY, TEXAS

Defendants' assertion of qualified immunity requires the Court to first ask "whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. In evaluating the existence of probable cause within an affidavit, the Court must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Considering the affidavit against *Malley* caselaw, the affidavit in this case is a significant improvement upon the "classic bare bones affidavit" in *Spencer. See* 489 F.3d at 661. Again, the *Spencer* affidavit merely recited the offense then added a conclusory statement that the individual committed that offense. *Id.* Defendant Chavez's affidavit, prepared in the context of a melee involving multiple shootings and 177 arrests, clearly identifies the subject, the offense, the parties involved, the time and circumstances under which they met, what they wore, identifying characteristics, and the weapons they used. Unlike the circumstances in *Kohler v. Englade*, the affidavit offers a nexus between the plaintiffs and the alleged crime. The instant affidavit is a significant improvement upon the *Blake* affidavit, which merely identified the plaintiff and recited the charge and relevant statue. In sum, Defendant Chavez's affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 923). Accordingly, Plaintiffs fail to overcome Defendants' qualified immunity and dismissal is appropriate.

### ii. *Franks* violation

"A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search [or arrest] warrant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). In the context of § 1983 claims asserting Fourth Amendment violations, a governmental official is:

> liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.

*Id.* at 442 (citing *Franks*, 438 U.S. at 171). "[T]he fact that a government official did not sign or draft the affidavit in support of a warrant does not preclude his or her liability for Franks violations." *Melton v. Phillips*, 837 F.3d 502, 508 (5th Cir. 2016). An agent can be liable when he deliberately or recklessly provides false information to another agent, who then includes the misinformation. *Id.* at 507–08.

"To prove reckless disregard for the truth [a plaintiff] must present evidence that [the defendant] 'in fact entertained serious doubts as to the truth' of the relevant statement." *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *Melton*, 837 F.3d at 509. "Whether a defendant in fact entertained serious doubts as to the truth is necessarily a fact question." *Id.* at 509–10. Plaintiffs' *Franks* claim alleges that Defendant Chavez deliberately or recklessly included false information in the warrant affidavit, and that every operative fact alleged in the affidavit is false. Pls.' Resp. at 8. Plaintiff also alleges that Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost deliberately or recklessly "caused an

affidavit against each Plaintiff to be presented to the Magistrate Judge that each knew to be materially false and misleading." Am. Compl. at 32.

While the complaint offers ambiguous allegations of the state of mind of Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost, at this early stage of the case, with no record yet developed, dismissal on qualified immunity grounds is inappropriate. *Wicks v. Miss. State Emp't Svcs.*, 41 F.3d 991, 995 (5th Cir. 1995); *see also McGee v. Carrillo*, 297 F. Appx. 319, 321–22 (5th Cir. 2008) (holding that denial of motion to dismiss on qualified immunity does not preclude resolution of qualified immunity on summary judgment); *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987). At the summary judgment stage, with a more complete factual record, the defendants can again raise their qualified immunity defense. Because the question of deliberateness or recklessness requires inquiry into the specifics of what Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost knew and why they contributed to or completed the affidavit as they did, the Court will allow Plaintiffs discovery on their *Franks* claim.

## B. Conspiracy

To state a claim for conspiracy under section 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act; and (2) an actual constitutional deprivation. *Cinel v. Cannock*, 15 F.3d 1338, 1343 (5th Cir. 1994). Plaintiffs allege that Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Swanton, Schwartz, and Frost met on May 17, 2015, to conspire to violate the plaintiffs' Fourth Amendment rights. Aside from fleshing out the existence of an agreement, this claim is dependent upon the existence of a constitutional violation—in this case, the conspiracy claim is inherently contingent upon Plaintiffs' *Franks* claim. Because the Court has found that there are fact issues regarding what Defendants

Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost knew and why they assisted with or completed the affidavits as they did, it would be inappropriate to dismiss Plaintiffs' conspiracy claim at the motion to dismiss stage.

### C. Bystander liability

Plaintiffs allege in the Omnibus Response, for the first time, that each individual defendant (1) knew that fellow officers were arresting the plaintiffs without probable cause; (2) had an opportunity to prevent the harm; and (3) chose not to act. Pls.' Omnibus Resp. at 71. As with Plaintiffs' *Franks* and conspiracy claims, a bystander liability claim is dependent on the individual defendants' state of mind—whether they deliberately or recklessly included false information in the warrant affidavit. As such, dismissal of this claim against Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz and Frost is inappropriate at this stage.

### D. Municipal liability

#### i.      Final Policymakers: Defendants Stroman and Reyna

Municipalities, including counties and cities, may be liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). In a § 1983 lawsuit against a municipality, a plaintiff must show that his constitutional injury was the result of official policy, custom, or the act of an official policymaker. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). Municipalities such as the City of Waco and McLennan County cannot be liable under a theory of respondeat superior, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Municipal liability under § 1983 requires proof of three elements: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom.

*Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

In the instant case, the plaintiffs invoke the single decision exception identified in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In *Pembaur*, the Supreme Court held that municipal liability under § 1983 may attach out of isolated decisions or actions taken by municipal policymakers. *See id.*; *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004) ("[P]laintiffs can hold municipalities liable for single instances of conduct perpetrated by the policymakers themselves; such one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions.").

The parties do not dispute that Defendant Stroman is the City's policymaker with regard to the events at Twin Peaks. Plaintiffs allege that Defendant Stroman, acting as chief of police, communicated about the incident with Defendant Reyna and ordered the arrests of the plaintiffs. Am. Compl. at 15–16. Plaintiffs allege that Defendant Stroman acted upon Defendant "Reyna's representation alone and no specific facts linking each individual motorcyclist to any criminal activity" *Id*. Plaintiffs also allege that Stroman deliberately or recklessly "caused an affidavit against each Plaintiff to be presented to the Magistrate Judge that [Stroman] knew to be materially false and misleading." *Id.* at 32. While the Amended Complaint is unclear as to the issue of Stroman's knowledge and state of mind, Plaintiffs' allegations are facially sufficient to state a claim for municipal liability at the motion to dismiss stage.

Defendants cite *Doerr v. Sisson* in support of their argument that a final policymaker's tangential involvement with the preparation or approval of a warrant application does not satisfy the single decision exception. 563 F. App'x 291, 294–295 (5th Cir. 2014). *Doerr*, however, dealt with a motion for summary judgment, not a motion to dismiss. Because that case was more fully

developed, the court was able to address the true extent of the final policymaker's actions. In the instant case, the parties have not had an opportunity to resolve factual disputes regarding the exact nature of Stroman's involvement in the arrests, and as such, dismissal is inappropriate.

Plaintiffs also argue that Defendant Reyna is the final policymaker for McLennan County with regard to the events at Twin Peaks. The County and Reyna dispute this. Local government liability in this context is guided by two considerations. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997). First, a court must ask "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989)) (holding a court must identify "those officials who have the power to make official policy on a particular issue"); *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the [municipality's] business."). Second, a court looks to relevant state law. *Id.* (citing *Jett*, 491 U.S. at 737 ("'[W]hether a particular official has "final policymaking authority" is a question of state law'" (quoting *Praprotnik*, 485 U.S. at 123))).

Here, the question is whether Defendant Reyna possessed final policymaking authority in the area of ordering arrests. Beyond Plaintiffs' bald conclusion that Reyna had the authority to order the police to make the arrests, there is nothing more before the Court to satisfy this factor. The Fifth Circuit has held that in Texas, the county sheriff is the county's final policymaker in the area of law enforcement—not the district attorney. *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)). "Among other responsibilities he is charged with preserving the peace in his jurisdiction and arresting all offenders." *Id.* (citing Tex. Code Crim. P. arts. 2.13, 2.17). The sheriff is McLennan County's

final policymaker in this area, and he can "define objectives and choose the means of achieving them" without county supervision. *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985).

In sum, Plaintiffs allege that Reyna wrongly determined that the plaintiffs should be arrested based only on their presence at Twin Peaks. As discussed above, the sheriff—not the district attorney—is the final policymaker regarding "preserving the peace and *arresting all offenders*." *Turner*, 915 F.2d at 136 (emphasis added); Tex. Code Crim. P. arts. 2.17 ("Each sheriff . . . shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial . . . . He shall apprehend and commit to jail all offenders, until an examination or trial can be had.") Thus, regardless of Reyna's involvement in helping to decide whether the arrests should be made, he did not have authority to make municipal policy. *Pembaur*, 475 U.S. at 480.

Plaintiffs argue that Reyna is McLennan County's final policymaker because he "was responsible for devising the overall prosecutorial goals and strategies" of the County on the day of the incident. Pls.' Omnibus Resp. at 76. Even assuming that is accurate, Reyna still cannot be the final policymaker in this context because Plaintiffs complain of wrongful *arrests*, not of wrongful prosecution. Thus, Reyna's prosecutorial goals and strategies are irrelevant to whether he was the final policymaker in the area of ordering and making arrests, because he had no authority to dictate policy in that area. Accordingly, the County cannot be held liable for Reyna's individual actions.

### ii.        Custom or Policy through Ratification of Conduct

Plaintiffs argue that the City is liable for "the unconstitutional acts of Defendants Chavez, Rogers, and Swanton" because Defendant Stroman, the City's final policymaker, knew of and ratified their actions. Am. Compl. at 40–41. Plaintiffs also allege that the County is, for the same

reasons, liable for Defendant Reyna's conduct. *Id.* at 41–42. Under certain circumstances, the Fifth Circuit has held that a single decision by a policy maker or a single incident of a constitutional deprivation may constitute a policy for which a municipality may be liable under § 1983. *See Brown v. Bryan Cnty.*, 219 F.3d 450, 459 (5th Cir. 2000); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

In *Grandstaff*, the Fifth Circuit permitted a jury to find a municipal policy after hearing evidence describing an extraordinary series of violent events and the subsequent failure to discipline officers involved in those events. 767 F.2d at 171–72. The Fifth Circuit's reasoning in *Grandstaff* was heavily influenced by the extreme facts of that case:

> [I]n response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

*Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (internal citations omitted).

Subsequent Fifth Circuit cases emphasize that the rationale presented in *Grandstaff* may only be applied to cases with equally extreme factual circumstances. *Id.* at 1161–62; *see also Castro v. McCord*, 259 F. App'x 664, 669 (5th Cir. 2007); *Snyder v. Trepagnier*, 142 F.3d 791, 797–98 (5th Cir. 1998); *Stokes v. Bullins*, 844 F.2d 269, 274 n.8 (1988). In cases without equally extreme facts, the Fifth Circuit does not permit an inference of an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (discussing *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982)).

Plaintiffs allege that multiple law enforcement agencies engaged in a "conspiracy of epic proportions" to perpetrate a mass violation of constitutional rights of 177 individuals. Am. Compl. at 8. City and County officials "doubled down on the original narrative by continuing to force feed the media the fiction that all those arrested . . . were criminal gang members who had descended on Waco and McLennan County and declared war." Pls.' Omnibus Resp. at 81–82. Plaintiffs point out that no policymaker of the City or the County questioned the wrongful conduct in any way, nor has any City or County employee been disciplined.

In the instant case, law enforcement officials arrested a large number of people in the confusing aftermath of a melee involving many injuries and multiple shootings in a group of hundreds of motorcyclists. Plaintiffs make no allegation of a culture of recklessness at the City or County. *See Snyder*, 142 F.3d at 798 ("The shooting of Snyder . . . hardly rises to the level of the 'extreme factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness in the NOPD.") The plaintiffs make no allegation of wanton violence on the part of law enforcement, as occurred in *Grandstaff*. The fact that a policymaker defends conduct that is later shown to be unlawful "does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (*citing Coon*, 780 F.2d at 1161–62). Even if this Court subsequently finds that the arrests at issue were unconstitutional, the facts alleged are not remotely close to the reckless violence and abuse of power discussed in *Grandstaff*.

### iii.     Unlawful detention

Plaintiffs briefly allege that policymakers in the City and County were aware that the plaintiffs were detained without probable cause yet refused to release Plaintiffs from custody. Am. Compl. at 41–42. Again, "municipal liability under section 1983 requires proof of three

elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. 658 (1978)). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).

Here, Plaintiffs offer almost no discussion of this claim in their live pleading or in their briefs addressing the motions to dismiss. They do not identify a policy or custom of the City or County that was the driving force behind the alleged constitutional violation. Nor do Plaintiffs offer a *Pembaur* theory as to this claim, and as such, allege only the-defendant-unlawfully-harmed-me accusation barred by *Iqbal*. 556 U.S. at 678. The claim is subject to dismissal for this reason alone.

Additionally, Plaintiffs' primary authority for their claim is *Baker v. McCollan*, 443 U.S. 137 (1979). Plaintiffs appear to argue that their detention without probable cause violates their right to due process. Pls.' Omnibus Sur-Reply at 18 (citing *Baker* 443 U.S. at 144 ("[D]etention pursuant to a valid warrant but in the face of repeated protests of innocence will, after the lapse of a certain amount of time, deprive the accused of liberty without due process of law.")). In the broader context of that quote, the Court noted that the "certain amount of time" depends on the pretrial procedural protections provided to criminal defendants, such as the rights to a speedy trial and habeas corpus. *Baker*, 443 U.S. at 144. The Court further noted that:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." *Patterson v. New York*, 432 U.S. 197, 208 (1977). "Due process does not require that every

conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Ibid*.

*Id.* at 145.

Plaintiffs do not allege in this claim that any particular defendant deprived them of any specific procedural protection in state court, such as the right to counsel, access to court, their speedy trial rights, or the right to habeas corpus, nor do they suggest that the defendants held them in violation of a court order. In the absence of any meaningful discussion of the applicability of *Baker*, this is a purely conclusory argument in support of a conclusory claim. Moreover, *Baker* does not stand for a freestanding right against detention in the face of a criminal defendant's sincere protestations of innocence. Nor does *Baker* create municipal liability for continued detention. As such, Plaintiffs fail to state a claim of unlawful detention.

## H.  Claims Against Defendant Swanton are Dismissed

Swanton served as the spokesman for the Waco Police Department after the Twin Peaks restaurant incident. As the public face of the police department, Swanton made various statements in press conferences that the plaintiffs strongly dispute. While Plaintiffs allege that Swanton caused them reputational damage, they do not raise a slander claim. Instead, Plaintiffs fundamentally allege the same claims against Defendant Swanton as they raise against the City defendants Stroman, Chavez, Lanning and Rogers. Those claims are: *Malley* and *Franks* Fourth Amendment claims, a Fourteenth Amendment violation, conspiracy, and bystander liability. As discussed in the Second Amended Complaint, Plaintiffs seek to attach municipal liability to the City of Waco through the individual City defendants' actions. As previously discussed, Plaintiffs' Fourth Amendment *Malley* claims and all Fourteenth Amendment claims are likewise dismissed as to Defendant Swanton. The other claims are addressed below.

As previously discussed in the preceding sections, the primary surviving claim is Plaintiff's *Franks* claim. Within the important context of Plaintiffs' *Franks* claim, their conspiracy claim, bystander liability claim, and municipal liability also survived dismissal. In the *Franks* section of Plaintiffs' second amended complaint, they allege that "Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost knowingly and intentionally, or with reckless disregard for the truth, caused an affidavit against each Plaintiff to be presented to the Magistrate Judge that each knew to be materially false and misleading." Pls.' Compl. at 32.

"[T]he fact that a government official did not sign or draft the affidavit in support of a warrant does not preclude his or her liability for Franks violations." *Melton v. Phillips*, 837 F.3d 502, 508 (5th Cir. 2016). An official can be liable when he deliberately or recklessly provides false information to another agent, who then innocently includes the misinformation in an affidavit. *Melton v. Phillips*, 837 F.3d 502, 507–508 (5th Cir. 2016).

While Plaintiffs arguably allege communication between Defendant Chavez (the warrant affiant) and Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost, notably absent from Plaintiffs' *Franks* claim is any allegation that Defendant Swanton ever communicated with Chavez. Nor does any such allegation appear anywhere in the preceding paragraphs that Plaintiffs incorporate into their claim. Plaintiffs allege that Swanton somehow caused the faulty warrant by falsely claiming to unidentified persons that the plaintiffs were gang members. Pls.' Compl. at 22, 24, 33. While the complaint alleges elsewhere that Swanton made such statements in press conferences, it fails to offer any explanation as to how his statements at the press conferences informed the preparation of the warrant affidavit. *Id.* at 32–34.

In the absence of any allegation that Swanton provided false information to Chavez, Plaintiffs fail to adequately plead a *Franks* claim against Defendant Swanton. Because Plaintiffs

fail to plead that Swanton violated their clearly established constitutional rights, they fail to overcome his qualified immunity and dismissal of the *Franks* claim against Swanton is appropriate. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019).

Plaintiffs' conspiracy and bystander liability claims are also dismissed. The conspiracy claim concludes that Swanton "entered into a conspiracy" and that he "knew" no probable cause existed to support the warrant, and that he met to "discuss this very issue." Pls.' Compl. at 37–38. This is the sort of conclusory claim barred by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is particularly true where Plaintiffs fail to allege that Swanton participated in the Fourth Amendment *Franks* violation. Merely concluding that Swanton knew of and participated in a conspiracy without pleading specific facts to support the reasonable inference that he did so, fails to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 557 (conspiracy allegations must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

Plaintiffs' bystander liability claim similarly fails against Swanton in the absence of a valid *Franks* or conspiracy claim. Where the conspiracy claim against Swanton is fatally conclusory, the bystander liability claim is conjectural. The complaint never clearly articulates such a claim against Swanton. Plaintiffs did not explain this claim until they filed their omnibus response to the defendants' motion to dismiss. ECF No. 63 at 79–81. Because this case is at the 12(b)(6) stage and Plaintiffs stated a *Franks* violation against Defendants Stroman, Chavez, Lanning, Rogers, Reyna, Schwartz, and Frost, the Court granted the plaintiffs considerable latitude with regard to the remainder of their claims. The conspiracy and bystander liability claims against Swanton, however, are flatly inadequate to state a claim or overcome Swanton's

qualified immunity. Therefore, the Court **DISMISSES** the conspiracy and bystander liability claims against Swanton.

## IV. CONCLUSION

Accordingly, it is **ORDERED** Defendant Frost and Schwartz's Motion to Dismiss (ECF No. 56) is hereby **DENIED**. The City Defendants' Joint Motion to Dismiss (ECF No. 57) is **GRANTED** in part and **DENIED** in part, in accordance with this Order. Defendant Reyna and McLennan County's Motion to Dismiss (ECF No. 58) is **GRANTED** in part and **DENIED** in part, in accordance with this Order. This case is referred to the Magistrate Judge for management of limited discovery in accordance with this Order.

The claims that are not dismissed and that remain are:

(1) Plaintiffs' Fourth Amendment *Franks* claim against Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost;

(2) Plaintiffs' conspiracy claims against Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost;

(3) Plaintiffs' bystander liability claims against Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Schwartz, and Frost;

(4) Plaintiffs' *Pembaur* claims against the City insofar as they relate to the surviving claims against Defendant Stroman.

**SIGNED** this 8th day of January 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE